UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD HOLT, ESQ., et al.,

        Petitioners,

v.                                                         Case No. 23-mc-0216-JAR-ADM

EMMANUEL DUNAGAN, et al.,

        Respondents.

## MEMORANDUM AND ORDER

In this miscellaneous civil action, attorneys Ronald Holt and David Harpool move the court to quash subpoenas issued by the U.S. District Court for the Northern District of Illinois in a putative class action pending before that court, *Dunagan v. Illinois Institute of Art-Schaumburg*, No. 19-cv-809. (ECF 1.) The plaintiffs in the *Dunagan* case, Emmanuel Dunagan, Jessica Muscari, Robert J. Infusino, Stephanie Porreca, Keishana Mahone, and Lakesha Howard-Williams (collectively, "the *Dunagan* plaintiffs"), served the subpoenas commanding Holt and Harpool to produce documents and appear for depositions in Leawood, Kansas. (ECF 1-3 and 1-4.) Under Federal Rule of Civil Procedure 45(d)(3), Holt and Harpool properly filed their motion to quash in this judicial district.

The matter is now before the court on the *Dunagan* plaintiffs' Motion for Transfer of Non-Parties Ronald L. Holt & David Harpool's Motion to Quash Subpoenas. (ECF 2.) By way of the motion, the *Dunagan* plaintiffs ask the court to transfer Holt and Harpool's motion to quash the subpoenas to the Northern District of Illinois, as permitted by Rule 45(f). For the reasons explained below, the motion is granted.

## I.   BACKGROUND

On December 16, 2018, the *Dunagan* plaintiffs filed a putative class action against their former school, the Illinois Institute of Art, LLC (the "Art Institute"); the school's direct owner, Dream Center Educational Holdings, LLC ("DCEH"); DCEH's parent company, the Dream Center Foundation ("DCF"); and former DCEH officers Brent Richardson, Chris Richardson, and Shelly Murphy (collectively, the "*Dunagan* defendants"). The action was originally filed in the Circuit Court of Cook County, Illinois, but was removed to the Northern District of Illinois in February 2019, where it remains pending. Highly summarized, the *Dunagan* plaintiffs allege that the *Dunagan* defendants violated the Illinois Consumer Fraud and Deceptive Practices Act by concealing that the Art Institute lost its status as an accredited institution when DCF took ownership in January 2018.

Shortly after the *Dunagan* plaintiffs filed the case, the Art Institute and DCEH were placed into federal receivership and the action was stayed against them, but not against the other defendants. Limited discovery proceeded until October 2021, when the *Dunagan* court stayed the action in its entirety, pending action by the receivership court. In February 2023, the *Dunagan* court lifted the stay as to defendants other than the Art Institute and DCEH. Discovery then began again and is now ongoing in the Northern District of Illinois.

On October 18, the *Dunagan* plaintiffs served nearly identical subpoenas on Holt and Harpool. Holt and Harpool are not parties in *Dunagan*, but were outside counsel to DCF and DCEH at the time DCF purchased the Art Institute and it lost accreditation. The subpoenas seek documents that relate to Holt and Harpool's representation of DCF, DCEH, the Art Institute, and the Art Institute of Colorado regarding the institutes' accreditation, conversion to non-profit status, and eligibility under Title IV of the Higher Education Act. (ECF 1-3, at 6; 1-4, at 6.) The

subpoenas directed Holt and Harpool to produce the documents at a law firm in Leawood, Kansas, and to appear for depositions at the same law firm on November 27 and 28, respectively.

On November 1, Holt and Harpool filed a motion to quash or modify the subpoenas.[1] Their main argument is that the *Dunagan* plaintiffs should pursue the requested documents directly from the *Dunagan* defendants as part of discovery in the Northern District of Illinois. They assert that the *Dunagan* plaintiffs, by seeking the documents from DCF and DCEH's former attorneys rather than from defendants themselves, are attempting an end-run around that court's discovery process. (*See* ECF 1, at 5-6 ("DCF has apparently objected to document requests in the [*Dunagan*] Lawsuit . . . . Thus, Plaintiffs' dispute appears to be with DCF; not Holt and Harpool.")). They note that DCF has "asserted privilege" in response to discovery requests made in *Dunagan*, and that they have a duty to assert the attorney-client privilege on behalf of their former clients. (*Id.* at 3, 8.) They recognize that the *Dunagan* plaintiffs contend that DCF waived the privilege. (*Id.* at 3.) According to Holt and Harpool, the court should quash the subpoenas and direct the *Dunagan* plaintiffs to "work through any privilege disputes with Defendants regarding assertions of privilege in the manner required by the local rules in the Northern District of Illinois." (*Id.* at 8-9.) Holt and Harpool's other arguments in the motion to quash are that the subpoenas' document request (1) uses an omnibus term (i.e., "related to") that makes it overly broad and burdensome, and (2) seeks, in part, irrelevant information about the Art Institute of Colorado.

On November 11, the *Dunagan* plaintiffs filed a motion to transfer Holt and Harpool's motion to quash or modify the subpoenas to the Northern District of Illinois, the issuing court. Holt and Harpool oppose transfer. Both motions are now fully briefed.

---

[1] The motion also seeks a protective order relieving Holt and Harpool of the obligation to provide a privilege log if the motion to quash is denied. (ECF 1, at 9-10.)

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 45 provides detailed instructions governing subpoenas. Pursuant to Rule 45(a)(2), "[a] subpoena must issue from the court where the action is pending." But when the person subpoenaed is not a party, Rule 45(c) directs that the place designated for compliance with the subpoena must be "within 100 miles of where the person resides, is employed, or regularly transacts business in person," which often falls in a judicial district outside that of the issuing court. In such a situation, Rule 45(d)(3) requires a person seeking to quash or modify the subpoena to file the motion in the compliance court. Rule 45(f) then permits the compliance court to "transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

Rule 45 does not define "exceptional circumstances." Accordingly, "[c]ourts applying Rule 45(f) routinely refer to the 2013 [Advisory Committee] Note's language in determining its scope." *US Plywood Integrity Coal. v. PFS Corp.*, No. 20-5042 BHS, 2021 WL 409968, at *2 (W.D. Wash. Feb. 5, 2021) (collecting cases). That note (the "2013 Note") directs as follows:

> [T]he proponent of transfer bears the burden of showing that [exceptional] circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

The list of factors in the 2013 Note is non-exclusive. *Weddle v. Williams*, No. 18-mc-00225-RBJ-KLM, 2019 WL 1620815, at *4 (D. Colo. Apr. 15, 2019). The court may also consider such factors as "the complexity, procedural posture, duration of pendency, and the nature of the

4

issues pending before, or already resolved by, the issuing court in the underlying litigation." *Axon Enter. Inc. v. Venjuris PC*, No. MC-22-00040-PHX-GMS, 2022 WL 16527519, at *2 (D. Ariz. Oct. 28, 2022) (quoting *Jud. Watch, Inc. v. Valle Del Sol, Inc.,* 307 F.R.D. 30, 34 (D.D.C. 2014)). The court must conduct a balancing test, considering "whether the circumstances favoring transfer outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Valle del Sol, Inc. v. Kobach*, No. 14-mc-219-JAR, 2014 WL 3818490, at *3 (D. Kan. Aug. 4, 2014).

### III. ANALYSIS

The *Dunagan* plaintiffs, as the proponents of transferring Holt and Harpool's motion to quash, bear the burden of showing that exceptional circumstances warrant such transfer. They assert that three circumstances favor transfer to the Northern District of Illinois: (1) that court previously ruled on the attorney-client-privilege issue raised in the motion to quash, and found the privilege waived, (2) that court will decide future privilege issues likely to arise, such as the questions of whether two individual defendants' recent assertion of an advice-of-counsel defense expands the scope of the waiver and whether DCF will be compelled to produce the requested documents, and (3) that court has greater familiarity with previous developments in the five-year-old, complex case. The court agrees.

#### A. Ensuring Consistency with the Issuing Court's Past Ruling

First, the court is highly persuaded that transfer is warranted to avoid the possibility of inconsistent rulings about the privilege at issue. In February 2021, the *Dunagan* plaintiffs filed a motion to overrule attorney-client-privilege objections that DCEH's former general counsel, defendant Chris Richardson, asserted during his deposition. (ECF 111 on *Dunagan* docket.) Richardson refused to answer questions about communications between DCEH and its attorneys about the Art Institute's accreditation status. On August 5, 2021, the *Dunagan* court granted

plaintiffs' motion, overruling the privilege objections and compelling Richardson to provide further deposition testimony. (ECF 155 on *Dunagan* docket, at 10-11.) In doing so, the court found that DCEH "waived any privilege over the relevant subject matter" because it produced documents related to attorney-client communications concerning the Art Institute's accreditation status to both plaintiffs and to the United States Congress (as part of a congressional investigation). (*Id.* at 11.) Specifically, the court ruled as follows:

> [DCEH] knowingly disclosed privileged communications concerning [DCEH's] decision-making process regarding what information to provide students (and what information to withhold) regarding the Art Institute's accreditation. [DCEH] took no steps to retrieve or otherwise mitigate the harm of its disclosures. That waives attorney-client privilege as to the subject matter. . . . Chris Richardson must answer all questions relating to the Art Institute's accreditation status and the decisions and discussions about what to communicate to students concerning its loss of accreditation.

(*Id.* at 12.)

The extent to which DCEH maintains—or has waived—an attorney-client privilege over communications with its counsel regarding the Art Institute's accreditation is at issue in Holt and Harpool's motion to quash the subpoenas. As mentioned above, Holt and Harpool seek to quash subpoenas requesting information about the Art Institute's accreditation, in part, because they "must respectfully protect the privileged information of their former clients." (ECF 1, at 8.) Holt and Harpool argue that the *Dunagan* ruling only held that DCEH—not its parent company, DCF—waived the attorney-client privilege on the subject of the Art Institute's accreditation. Although this technically may be true (although it seems a reach given the entities' relationship), whether DCF maintains the privilege is, at the very least, intertwined with the *Dunagan* court's August 5, 2021 ruling.

Where the issuing court "has already ruled on issues presented by the motion," transfer is desirable to avoid inconsistent rulings. FED. R. CIV. P. 45(f) Advisory Committee Note (2013 amendments); *see also Valle del Sol,* 2014 WL 3818490, at *4 (finding transfer warranted to avoid the "danger of inconsistent rulings" where issuing court had previously ruled on attorney-client-privilege issues "very similar to those presented by the Motion to Compel that Petitioners seek to transfer"). "Because uniformity of discovery rulings in a case of this complexity is critical to achieving fairness to the parties and non-parties, this factor weighs in favor of a transfer." *Axon*, 2022 WL 16527519, at *3 (quotation omitted).

### B. Setting the Stage for Consistency in Future Rulings

Second, the likelihood that the *Dunagan* court will be faced with deciding additional issues surrounding the discoverability of the information sought by the subpoenas weighs in favor of transfer—both in the interest of saving judicial resources and in avoiding inconsistent rulings. The *Dunagan* plaintiffs note that defendants Chris Richardson and Brent Richardson have stated that they will defend the claims against them by asserting that they relied on the advice of counsel, and in April they disclosed Holt and Harpool as individuals likely to have information that they may use to support their defense. (ECF 7-1 at 2-3.) This advice-of-counsel defense has the potential to bring questions before the *Dunagan* court regarding whether, and to what extent, the attorney-client privilege that Holt and Harpool assert was waived when their former clients put the communications "at issue."

In addition, on November 3, the *Dunagan* plaintiffs served a document request on DCF for the exact same documents that they seek in the Holt and Harpool subpoenas. (ECF 6-3, at 3-4.) This discovery addresses Holt and Harpool's primary argument in the motion to quash: that the *Dunagan* plaintiffs should pursue the requested documents directly from the *Dunagan* defendants as part of discovery in the Northern District of Illinois. (See ECF 1, at 5-6.) Given that court's

7

familiarity with the underlying case, it is in a much better position to determine whether Holt and Harpool, DCF, or none of them must produce the requested documents. The interconnectedness of the subpoena with other discovery issues likely to arise in *Dunagan* supports transferring the motion to quash. This will allow the *Dunagan* court to create a consistent set of discovery decisions applicable across the litigation. *See In re Cassell*, No. 2:16-mc-00602-DB-EJF, 2016 WL 3645166, at *2 (D. Utah June 30, 2016) (identifying the "interconnectedness of [the] subpoena with other discovery issues pending" in the underlying litigation as supporting "transfer to allow all of these rulings to create a consistent set of discovery decisions to address all matters in the litigation").

### C. Complexity and Length of Underlying Case

The third consideration favoring transfer of the motion to quash is the complexity of the underlying case and the length of time it has been pending. The *Dunagan* case has been pending for five years. During that time, the Northern District of Illinois has issued numerous orders and navigated the case through a receivership affecting some of the parties. It has invested significant resources and undoubtedly has far more knowledge about the case than this court. Such knowledge will be particularly useful in evaluating the relevance argument that Holt and Harpool assert in the motion to compel. Given the age and complexity of this particular underlying case, judicial economy is served by transferring the motion. *See, e.g.*, *Axon*, 2022 WL 16527519, at *3 (transferring the motion "in the interests of judicial economy" where the underlying case had been pending for more than six years); *Schell v. Amendia, Inc.,* No. 21-mc-00090-PAB-STV, 2021 WL 1541712, at *3 (D. Colo. Apr. 20, 2021) (holding that, in case pending for more than three-and-a-half years, "the duration and nature of the proceedings in the Underlying Case support transfer"); *Jud. Watch,* 307 F.R.D. at 35 (holding that because the underlying case had been pending for four

years and had involved "innumerable discovery disputes," the issuing court was in a far better position to evaluate the relevance of, and necessity for, the documents demanded in subpoena).

### D. Burden of Transfer

Against these considerations supporting transfer, the court must weigh the burden that transfer would impose on Holt and Harpool. Holt and Harpool argue that transferring the motion could potentially cause their counsel to have to travel from Kansas to the Northern District of Illinois to argue the motion, that their Kansas counsel is "not familiar with the local rules in that District," and that their Kansas counsel "may require or desire the assistance of local counsel even if solely for purposes of advice." (ECF 6, at 6.) They also suggest that a transfer might require them to re-brief their motion to quash because they relied upon "District of Kansas case law and local rules," rather than caselaw applicable in the Northern District of Illinois. (*Id.*) Finally, Holt and Harpool speculate that they could be called to produce the documents or sit for a deposition in Illinois.

The court finds Holt and Harpool's asserted burdens too speculative to be accorded much weight. First, Rule 45(f) provides that upon transfer, the movants' attorney "may appear on the motion as an officer of the issuing court." Second, the 2013 Note encourages judges in the issuing court "to permit telecommunications methods to minimize the burden a transfer imposes on nonparties." FED. R. CIV. P. 45(f) Advisory Committee Note (2013 amendments). And, in any event, the judge presiding over the *Dunagan* case, U.S. District Judge Jeffrey I. Cummings, has a standing order stating his default rule that "[a]ll civil hearings will be held via telephone."[2] So there appears to be little real burden on Holt and Harpool, as their attorneys may enter their appearances and appear telephonically in the Northern District of Illinois. *See Schell*, 2021 WL

---

[2] *See* https://www.ilnd.uscourts.gov/Judges.aspx.

1541712, at *5 (transferring motion where "[t]he only burden identified by Movant, however, is the possibility that counsel may be required to travel to the Northern District of Georgia for a hearing on the Motion, which would be costly and cause additional burden due to the risks associated with travel during the COVID-19 pandemic"). Moreover, their counsel should not need to spend a significant amount of time familiarizing themselves with the local rules in the Northern District of Illinois. *See, e.g., Axon,* 2022 WL 16527519, at *3 ("[A]lthough [movant] itself does not have any Florida-licensed attorneys, it will suffer, at most, a minor inconvenience in obtaining such counsel or taking the necessary steps to represent itself in a Florida court.").

The court also finds that modifications to the briefs on the motion to quash should be minimal or non-existent. Holt and Harpool do not specify any particular conflict between the applicable law in the District of Kansas and in the Northern District of Illinois. This hypothetical burden thus bears little weight. *See id.* at *4 ("A hypothetical conflict of laws, without more, does not pose an undue burden on Venjuris or overcome the interests that favor a transfer."); *Weddle,* 2019 WL 1620815, at *5 (transferring case from Colorado to Virginia and noting that arguments in any modified briefs "would remain largely the same, if not identical").

Finally, the court is unpersuaded by Holt and Harpool's suggestion that they might be called upon to produce documents or sit for depositions in Illinois. The subpoenas themselves will not change upon transfer. They will still call for compliance in Kansas. Furthermore, the 2013 Note contemplates that, if the motion to quash is denied and the issuing court orders discovery, "retransfer" may be needed to enforce the order. FED. R. CIV. P. 45(f) Advisory Committee Note (2013 amendments). But the court finds it unlikely that the step of retransfer will be necessary because Holt and Harpool do not suggest they would refuse to comply with the subpoenas if the court orders them to do so.

### IV. CONCLUSION

The court concludes that transfer is warranted given the absence of any certain or more-than-minimal potential burden. In sum, "the relevant factors favor granting a transfer because the interests in having the issuing court decide the discovery dispute outweigh the interests of the party served with the subpoena in obtaining local resolution of the motion." *Axon*, 2022 WL 16527519, at *2 (quotation omitted). The court further notes that it has consulted with Judge Cummings about these subpoena-related motions (as suggested by the 2013 Note), and he is anticipating transfer of Holt and Harpool's motion to quash or modify the subpoenas.

**IT IS THEREFORE ORDERED** that the *Dunagan* plaintiffs' Motion for Transfer of Non-Parties Ronald L. Holt & David Harpool's Motion to Quash Subpoenas (ECF 2) is granted.

**IT IS FURTHER ORDERED** that Holt and Harpool's Motion Quash [sic] or, in the alternative, Motion to Modify the Subpoenas and Motion for Protective Order and Stay of Depositions (ECF 1) is transferred to the Northern District of Illinois. The Clerk is directed to work with the Clerk of the Northern District of Illinois to transfer the motion and related briefs for filing in *Dunagan v. Illinois Institute of Art-Schaumburg, LLC*, Case No. 19-cv-809.

Dated December 8, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell<br>
Angel D. Mitchell<br>
U.S. Magistrate Judge